### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN FLYNN, *et al.*,** | |
| Plaintiffs, | |
| v. | Civil Action No. 03-1718 (AK) |
| **DICK CORPORATION,** | |
| Defendant. | |

### MEMORANDUM OPINION

This matter is before the Court on remand from the United States Court of Appeals for the District of Columbia Circuit.  *See Flynn v. Dick Corp.*, 481 F.3d 824 (D.C. Cir. 2007).  Per this Court's direction at the December 21, 2007 status conference, the parties submitted briefs outlining the actions they request that this Court take on remand.  Accordingly the Court has before it Defendant Dick Corporation's Brief in Support of It's Position and the Action Requested of the Court [59] ("Def.'s Br."), Plaintiff Funds' Memorandum in Support of Their Position on Remand [61] ("Pl.'s Mem."), Defendant's Reply [62], and Plaintiff's Surreply [63].

## I.   BACKGROUND

In 1989, Defendant Dick Corporation, a Pennsylvania-based construction company, entered into an Independent Agreement ("IA") with the local affiliate of the International Union of Bricklayers and Allied Craftworkers ("BAC") in eastern Massachusetts, agreeing "to be bound by all the terms and conditions of the effective Collective Bargaining Agreement and any . . .

1

successor agreements." *Flynn*, 481 F.3d at 826.  In 2000, Dick Corporation entered into a similar

IA with the local BAC affiliate in western Massachusetts.  *Id*. at 827.  The 2000 IA bound Dick

Corporation to a Collective Bargaining Agreement ("CBA") executed in 1992 and to any

successor CBA.  *Id*.  Eventually, the CBA referenced in the 1989 IA was succeeded by an August

2002 CBA, and a 2000 CBA tied to the 2000 IA was succeeded by a September 2002 CBA.  *Id*.

Both the August 2002 CBA and the September 2002 CBA contained a "traveling contractor's

clause," which required "that a signatory employer with 'any work [covered by the CBA] to be

performed outside of the geographic area' of the CBA and 'within the geographic area covered

by an Agreement with another affiliate of [the BAC] ... abide by the full terms and conditions of

the Agreement in effect in the job site area.'" *Id*.

        On the basis of these traveling contractor's clauses, the Trustees of the Bricklayers and

Trowel Trades International Pension Fund ("IPF" or "Fund"), a multi-employer employee benefit

plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-

1461, brought suit against the Dick Corporation to collect employee benefit contributions in

connection with Dick Corporation's construction projects at two job sites in Florida.  *Id*. at 826,

827.  The Fund alleged that the traveling contractor clauses bound Dick Corporation to a Florida

CBA, and that Dick Corporation violated the Florida CBA when it used non-union

subcontractors on its construction projects in Florida.  *Id*. at 827.  In response, Dick Corporation

challenged its liability under the Florida CBA.  *Id*. at 826.

        Following discovery, this Court granted Dick Corporation's motion for summary

judgment, holding, in part, that there was not a valid Florida CBA in existence at Dick

Corporation's Florida job sites that obligated Dick Corporation to pay employee benefits into the

2

fund under the traveling contractor's clauses. *Id*. at 828 (citing *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 199-202 (D.D.C. 2005)).  Specifically, this Court found that the documents the Fund submitted as the applicable Florida CBA was not an enforceable agreement because it lacked provisions on wages and contract duration.  *Id*.  Accordingly, this Court concluded that the Florida CBA was "not an agreement in effect (namely, a legally binding agreement), but merely provide[d] a framework for one."  *Flynn*, 384 F. Supp. 2d at 200.  The Court also found that summary judgment should be granted in favor of Dick Corporation because the Labor Management Relations Act ("LMRA") precluded the contributions that the Fund sought.  *Id*. at 202.

Pursuant to Federal Rule of Civil Procedure 59(e), the Fund moved for reconsideration of the Court's finding that there was no valid CBA in effect at Dick Corporation's Florida job sites. (Pl.'s Mem. Supp. Mot. Reconsideration [45-2] at 2.) The Fund argued that the template Florida CBA, when read together with a declaration from Robert Blanco, Regional Director of BAC and President of Bricklayers Local 1 Florida, and exhibits attached thereto, established that an agreement was in effect in Florida.  (*Id*.)  Dick Corporation responded that the Blanco Declaration and its attachments "were not properly before the Court because Plaintiffs had withheld them from Dick during discovery despite Dick expressly requesting them from Plaintiffs."  (Def.'s Opp'n to Pl.'s Mot. Reconsideration [48] at 4-5.)  In granting the Fund's motion, this Court concluded that it had "erred when it found that evidence of the detailed wage scales and contribution rates necessary to complete the contract had not been submitted into the record" and rejected Dick Corporation's suggestion that it had initially ignored these documents as a discovery sanction.  (Mem. Order of 11/15/05 [51] at 6.)  Accordingly, this Court vacated

the grant of summary judgment in favor of Dick Corporation on the basis that a Florida CBA was not in effect.  (*Id*.)  However, this Court found that Dick Corporation was still entitled to summary judgment on the ground that the LMRA precluded the contributions that the fund sought.  (*Id*. at 6-7.)

The Fund appealed.  The Court of Appeals first reversed this Court's holding that the benefit contributions are prohibited under the LMRA.  *Flynn*, 481 F.3d at 836.  The Court of Appeals then remanded this Court's Rule 59(e) ruling to consider Dick Corporation's argument that this Court should have excluded the Blanco Declaration as a discovery sanction pursuant to Federal Rule of Civil Procedure 37(c)(1).  *Id*.  Finally, the Court of Appeals "remand[ed] for further proceedings consistent with this opinion the issues of the applicability of the Florida collective bargaining agreement at the Company's Florida jobsites and the appropriate award of damages."  *Id*.  Consistent with this mandate and following a status conference on December 21, 2007, this Court ordered the parties to submit additional briefing in support of the actions that they are asking this Court to take on remand.

## II.   DISCUSSION

### A.   Admissibility of the Blanco Declaration and Exhibits Thereto

Dick Corporation submits that the Blanco Declaration and the exhibits thereto are inadmissible, and should not have been considered by the Court in its November 15, 2005 Memorandum Order, because the Fund produced these documents for the first time in connection with their cross-motion for summary judgment.  (Def.'s Brief [59] at 5-6.)  As support for this position, Dick Corporation points to Federal Rule of Civil Procedure 37(c)(1), which provides, in

4

part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).  The burden is on the party resisting sanctions to demonstrate that its failure to provide information was either substantially justified or harmless.  *Norden v. Samper*, 544 F. Supp. 2d 43, 50 (D.D.C. 2008).[1]

The Court need not decide whether the Fund improperly failed to produce the Blanco Declaration and rate documents during discovery because the Court finds that any such withholding was harmless.  After the Fund submitted these materials in support of its motion for summary judgment, Dick Corporation could have moved for additional discovery pursuant to Federal Rule of Civil Procedure 56(f).  If Dick Corporation had so moved, it could have, for example, deposed Mr. Blanco, explored the authenticity of the documents attached to his declaration, and taken other discovery regarding whether there was a CBA in existence at Dick Corporation's Florida job sites.  Even if the Fund's withholding of these documents was improper, the Rules afforded Dick Corporation an adequate opportunity to take discovery on the subjects contained therein before filing their opposition to the Fund's motion for summary judgment.  Accordingly, the Court finds that the Fund's failure to provide these documents was

---

[1] The Fund asserts that the Court implicitly denied Dick Corporation's Rule 37 Motion when the Court considered the Blanco Declaration and rate documents in rendering its November 15, 2005 Memorandum Order. (Pl.'s Mem. [61] at 15; Pl.'s Surreply [63] at 3.)  Although the Court did not engage in a full Rule 37(c) analysis at that time, and accordingly has been ordered to do so on remand, the Court noted that it had initially failed to consider the documents not as a sanction for non-disclosure, but rather because they were "[a]wash in a sea of unsigned and unlabeled agreements and contracts."  (Mem. Order of 11/15/05 at 6 n.4.)  Specifically, the Court stated: "Defendants suggests that to the extent the Court failed to consider Blanco's Declaration, it must have been because the attached exhibits had been impermissibly withheld in discovery.  The Court's omission was not nearly so deliberate."  (*Id.* (citation omitted).)

harmless and the sanction of exclusion is not warranted.

      B.    <u>Existence of a CBA in Effect at Dick Corporation's Florida Job Sites</u>

The Court now will address whether, in light of the admissibility of the Blanco

Declaration, there is a genuine issue of material fact as to the existence of a CBA in effect at

Dick Corporation's Florida job sites.  In rendering its Rule 59(e) opinion, the Court considered

the Blanco Declaration and the contribution rate information attached thereto, but nonetheless

was "unable to find on the basis of the existing evidence that the Florida agreement was in fact

'in effect' in the local job sites" because the CBA in the record lacked signatures.  (Mem. Order

of 11/15/05 at 6.)  The Court of Appeals addressed the lack of signatures in its opinion:

> While the document provided by the Florida BAC affiliate did not contain
> signatures, it referenced the Union Contractors and Subcontractors Association as
> the employer party to the agreement. Further, Robert Blanco, the President of the
> Florida BAC, stated that the wage and contribution rates in the submitted material
> represented the "Memoranda of Agreement" between the local BAC and employer
> groups when Dick Corporation's Florida projects were in progress.  Thus, the
> material the Fund submitted as well as Blanco's declaration identified the parties
> to the contested Florida CBA.

*Flynn*, 481 F.3d at 835 n.12 (citations omitted).

After reviewing the relevant case law on this issue, the Court concludes that a CBA need

not be signed in order for it to bind an employer.  *See Brown v. C. Volante Corp.*, 194 F.3d 351,

355 (2d Cir. 1999) (holding that an unsigned, written agreement satisfies the "written agreement"

requirement set forth in § 302(c)(5)(B) of the LMRA); *Moriarty v. Larry G. Lewis Funeral Dirs.*

*Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) (noting that neither § 302(c)(5)(B) nor general principles

of contract law require a CBA to be signed).  Because the lack of a signed CBA is not a bar to

finding that a CBA was in effect at Dick Corporation's Florida job sites, the Court finds that

there is no genuine issue of material fact as to the existence of a CBA in effect at Dick

Corporation's Florida job sites such that the Fund is entitled to summary judgment.[2]


C.       Damages for Dick Corporation's Breach of the Florida CBA

Dick Corporation does not dispute that it breached the Florida CBA by employing non-

union subcontractors. *Flynn*, 481 F.3d at 832. Therefore, having found that Dick Corporation

was bound to a CBA at its Florida job sites, the only remaining issue is the appropriate award of

damages that Dick Corporation must pay to the Fund. The Fund believes that it is entitled to

$1,893,737.71, representing delinquent contributions, interest, additional interest, expenses, and

attorneys' fees. (Pl.'s Mem. at 13.) The Fund's request for damages is based on Section

502(g)(2) of ERISA, which provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to
> enforce section 1145 of this title [requiring contributions under the terms of a
> CBA] in which a judgment in favor of the plan is awarded, the court shall award
> the plan --
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions;
>> (C) an amount equal to the greater of --
>>> (i) interest on the unpaid contributions, or
>>> (ii) liquidated damages provided for under the plan liquidated

---

[2] Dick Corporation argues that "Mr. Blanco's declaration and the attached documents are an impermissible substitute for an actual Florida CBA (which is not in evidence)" and therefore the Court has no basis for concluding that Dick Corporation was bound to a CBA at its Florida job sites. (Def.'s Br. at 21.) To support this proposition, Dick Corporation cites *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662 (7th Cir. 2003). In that case, the District Court struck an affidavit that quoted from a Trust Agreement in which Corman obligated itself to make benefit plan contributions after the expiration of the CBA because the agreement was never made part of the record. *Id*. at 669. This case is not on point because, as the Fund points out, the Blanco affidavit "is not offered as a substitute for the contract terms." (Pl.'s Mem. at 10-11.) Unlike in *Dugan*, where the court was only presented with "snippets" of the operative contract, this Court has before it all of the terms of the Florida CBA in the form of a template CBA and the accompanying rate information.

> damages provided for under the plan in an amount not in excess of
> 20 percent (or such higher percentage as may be permitted under
> Federal or State law) of the amount determined by the court under
> subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the
> defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

As to the unpaid contributions to which the Fund may recover under § 1132(g)(2)(A), the Court of Appeals held that "The Fund is entitled to damages resulting from the breach in the form of benefit contributions 'in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties." *Flynn*, 481 F.3d at 832-33 (quoting *Trs. of the Teamsters Constr. Workers Local 13, Health & Welfare Trust Fund for Colo. v. Hawg N Action, Inc.*, 651 F.2d 1384, 1386-87 (10th Cir. 1981). To establish the contributions it would have received if Dick Corporation had fully performed under the Florida CBAs, the Fund submitted the declaration of Philip Vivirito, an independent auditor who reviewed Dick Corporation's books and records. (Pl.'s Mem. at 12.) Mr. Vivirito's "audit revealed that Dick Corp.'s subcontractors failed to report and remit contributions for a total of 155,062 hours paid to its employees for bargaining unit work performed under the Florida agreement." (Vivirito Decl. [61-4] ¶ 7.) Using the contribution rates set forth in the Blanco Declaration, Mr. Vivirito determined that Dick Corporation owed delinquent contributions in the amount of $727,345.78. (*Id.* ¶¶ 8-9.)

Mr. Vivirito also calculated the amount of interest and additional interest that the Fund is entitled to recover under §§ 1132(g)(2)(B) and (C). In accordance with the *Collection Procedures of the Central Collections Unit of the Bricklayer and Allied Craftworkers*

8

("Collection Procedures"), Mr. Vivirito assessed interest on the delinquent contribution at a rate

of 15 per cent per annum and determined that the total interest due was $577,983.88.  (*Id.* ¶ 10.)

Mr. Vivirito also assessed additional interest in accordance with the Collection Procedures at a

rate of 15 per cent per annum and determined that Dick Corporation owed an additional

$577,983.88 in interest.  (Vivirito Decl. ¶ 11; Pl.'s Mem. at 13.)  Based on these calculations,

Mr. Vivirito concluded that Dick Corporation owes a total of $1,155,967.76 in interest.  (Vivirito

Decl. ¶ 13.)

As to the attorney's fees and costs that are recoverable under § 1132(g)(2)(D), the Fund

seeks (1) $10,130.00, representing the fee charged by Mr. Vivirito's firm for performing the audit

of Dick Corporation's books; (2) $150, which the Fund incurred in filing the instant action; (3)

$144.17, representing the costs charged by the process server for serving the summons and

complaint on Dick Corporation; and (4) an amount of reasonable attorney's fees to be determined

later.  (Pl.'s Mem. at 13; Vivirito Decl. ¶ 14; Stupar Decl. [61-5] ¶¶ 15-17.)

Dick Corporation does not challenge the manner in which Mr. Vivirito calculated interest

or the Fund's claim that it is entitled to attorneys' fees and costs.  Dick Corporation does,

however, dispute the Fund's calculation of delinquent contributions.  (Def.'s Br. at 23; Def.'s

Reply at 13-14.) Specifically, Dick Corporation asserts that "Trustees' own documents are

inconsistent as to the applicable rates and trade jurisdictions," and submits declarations that

suggest that Mr. Vivirito improperly included work performed by certain subcontractors, namely

ArtCrete & Restorations, Inc. ("ArtCrete"), Johnston & Simmons Concrete Placing and

Finishing, Inc. ("Johnston"), and Capform, Inc. ("Capform"), when computing the delinquent

contributions owing to the Fund.  (Def.'s Br. at 23; Gardner Decl. [59-5] ¶¶ 4-5; Fisher Decl.

9

[59-5] ¶¶ 4-7.)[3]  The Fund responds that Mr. Vivirito, in reviewing the books and records of Dick

Corporation, was able to discern which subcontractors were performing bricklayer work covered

by the Florida CBA and that Mr. Vivirito only "assessed damages owed by Dick Corp. on the

basis of the hours of employees who the certified payroll audits reflected were performing

bricklayer and related work."  (Pl.'s Surreply [63] at 10; *see also* Third Vivirito Decl. [59-5] ¶ 4-

8.)

Once the Fund produced the Vivirito Declaration as evidence of the delinquent

contributions that Dick Corporation owes, the burden shifted to Dick Corporation "to prove that

the correct amount of contributions is otherwise."  *Chicago Painters' & Decorators Pension

Fund v. Sel-Cor Servs., Inc.*, No. 91-C-1119, 1992 WL 168796, at *3 (N.D. Ill. 1992) (citing

*Combs v. King*, 764 F.2d 818, 825-27 (11th Cir. 1985); *Brick Masons Pension Trust v. Indus.

Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988)).  An employer does not meet this

burden if it merely presents "generalized and conclusory allegations" that the auditor's

calculations included work not covered by the CBA.  *Laborers' Pension Fund v. RES Envtl.

Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004) (finding that an affidavit that identified five

employees and stated that they "performed work not covered by the [CBA]" was insufficient

evidence to prevent summary judgment).

The Court finds that the Gardner and Fisher Declarations contain the types of generalized

---

[3]  If the work performed by these subcontractors are excluded from the damage calculation, Dick
Corporation owes the Fund $225,398.73 in delinquent contributions plus $171,869.52 in interest and $171,869.52 in
additional interest.  (Pl.'s Surreply, Attach. A [63].)  If only the work performed by ArtCrete and Johnston are
excluded, Dick Corporation owes the Fund $672,372.85 in delinquent contributions plus $532,593.85 in interest and
$532,593.85 in additional interest.  (*Id*., Attach. B.)

and conclusory allegations that *Laborers' Pension Fund* rejects and accordingly Dick

Corporation has not met its burden of challenging Mr. Vivirito's calculations regarding

delinquent contributions.  The Court further finds that, pursuant to 29 U.S.C. § 1132(g)(2), the

Fund is entitled to recover interest, additional interest, and costs in the amounts set forth in the

Vivirito and Stupar Declarations.  Finally, the Court finds that the Fund is entitled to recover

reasonable attorneys' fees and will order the Fund to submit its calculation of such fees within

ten days of this Memorandum Opinion.  Dick Corporation may file an opposition to the Fund's

application for attorneys' fees within five days thereafter, and the Fund may then file a reply

within five days of Dick Corporation's opposition.


**III.**   **CONCLUSION**

    For the foregoing reasons, the Court concludes that the Blanco Declaration, and the

exhibits attached thereto, along with other evidence in the record, establishes that a Florida CBA

was in effect at Dick Corporation's Florida job sites.  Accordingly, the Court will grant summary

judgment in favor of the Fund and order Dick Corporation to pay $1,893,737.71 in delinquent

contributions, interest, and costs.  The Fund is also entitled to attorneys' fees at an amount to be

determined later.  An Order consistent with this Memorandum Opinion is filed

contemporaneously herewith.


Dated: June  16 , 2008                      _____/s/_____

                                        ALAN KAY
                                        UNITED STATES MAGISTRATE JUDGE