UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN FLYNN,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DICK CORPORATION,** <br><br> Defendant. | Civil Action No. 03-1718 (AK) |

## MEMORANDUM OPINION

Pending before the Court are Defendant Dick Corporation's Motion to Alter or Amend the Judgment [67] and Plaintiff Fund's Opposition to Defendant's Motion to Alter or Amend the Judgment [69].

### I. Background

This case involves Plaintiffs' claim that Defendant Dick Corporation breached a Collective Bargaining Agreement ("CBA") that was in effect at its Florida job sites by employing non-union subcontractors.[1] (Mem. Op. [64], at 2.) On June 16, 2008, the Court found "that there is no genuine issue of material fact as to the existence of a CBA in effect at Dick Corporation's Florida job sites such that the Fund is entitled to summary judgment." (*Id*. 7.) Because Dick Corporation did not dispute that it breached the CBA by employing non-union subcontractors, the Court then calculated the damages that Dick Corporation owed to Plaintiffs on account of its

---

[1] For a more detailed recitation of the lengthy factual and procedural history of this case, see this Court's June 16, 2008 Memorandum Opinion.

1

breach.  (*Id*.)

Plaintiffs sought $1,893,737.71, representing $727,345.78 in delinquent contributions, $577,983.88 in interest, $577,983.88 in additional interest, $10,424.17 in expenses, and attorneys' fees in an amount to be determined later pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA").[2]  (*Id*.)  To establish the amount of contributions that Plaintiffs would have received absent Dick Corporation's breach of the CBA[3], Plaintiffs submitted a declaration from Philip Vivirito ("Vivirito Decl."), an independent auditor who reviewed Dick Corporation's books and records.  (*Id*. 8.)  Mr. Vivirito examined the payroll records of Dick Corporations's subcontractors "to determine which employees of Dick Corporation and its subcontractors were performing [ ] work" covered by the CBA."  (3d Vivirito Decl. [59-5] ¶ 4.)  The payroll records allowed Mr. Vivirito to determine which employees were performing covered work because they "specifically indicated the type of work each employee

---

[2] Section 502(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title [requiring contributions under the terms of a CBA] in which a judgment in favor of the plan is awarded, the court shall award the plan --
    (A) the unpaid contributions,
    (B) interest on the unpaid contributions;
    (C) an amount equal to the greater of --
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in excess of
        20 percent (or such higher percentage as may be permitted under Federal or
        State law) of the amount determined by the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

[3] The Court of Appeals held that "[t]he Fund is entitled to damages resulting from the breach in the form of benefit contributions 'in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties." *Flynn*, 481 F.3d at 832-33 (quoting *Trs. of the Teamsters Constr. Workers Local 13, Health & Welfare Trust Fund for Colo. v. Hawg N Action, Inc.*, 651 F.2d 1384, 1386-87 (10th Cir. 1981).

was performing by stating, next to each employees name, 'bricklayer,' 'laborer,' etc." (*Id*.)  For one of Dick Corporation's subcontractors, Capform, Inc. ("Capform"), Dick Corporation failed to provide Mr. Vivirito with certified payroll records, and accordingly Mr. Vivirito "did not have information indicating the names of the employees who performed the work or the number of hours that each employee worked in each of the various months covered by the audit." (*Id*. ¶ 7.)  Because Mr. Vivirito "only had the total number of man hours attributable to Capform, Inc.'s subcontractors in Florida," Mr. Vivirito "included these hours in calculating the damages owed by Dick Corporation by allocating them evenly to each month covered by the audit." (*Id*.)

Mr. Vivirito's "audit revealed that Dick Corp.'s subcontractors failed to report and remit contributions for a total of 155,062 hours paid to its employees for bargaining unit work performed under the Florida agreement." (Vivirito Decl. [61-4] ¶ 7.)  Using the contribution rates set forth in the Blanco Declaration, Mr. Vivirito determined that Dick Corporation owed delinquent contributions in the amount of $727,345.78.  (*Id*. ¶¶ 8-9.)  Mr. Vivirito also calculated the amount of interest and additional interest that the Fund is entitled to recover under ERISA.  In accordance with the *Collection Procedures of the Central Collections Unit of the Bricklayer and Allied Craftworkers* ("Collection Procedures"), Mr. Vivirito assessed interest on the delinquent contribution at a rate of fifteen per cent per annum and determined that the total interest due was $577,983.88.  (*Id*. ¶ 10.)  Mr. Vivirito also assessed additional interest in accordance with the Collection Procedures at a rate of fifteen per cent per annum and determined that Dick Corporation owed an additional $577,983.88 in interest.  (*Id*. ¶ 11.)  Based on these calculations, Mr. Vivirito concluded that Dick Corporation owed a total of $1,155,967.76 in interest and additional interest.  (*Id*. ¶ 13.)

Dick Corporation did not challenge Plaintiffs' claim for attorneys' fees[4] and costs or their entitlement to, or Mr. Vivirito's calculation of, interest and additional interest.  (Mem. Op. 9.) Dick Corporation did, however, challenge Plaintiffs' calculation of delinquent contributions and argued that there were "significant disputed material facts regarding the quantum of contributions" such that a grant of summary judgment in favor of Plaintiffs on the issue of damages would be inappropriate.  (*Id*.)  Specifically, Dick Corporation asserted that there were disputes about "how much of the work subcontracted by Dick Corporation was covered by the Florida CBA's trade jurisdiction such that this subcontracting violated the Florida CBA."  (Def.'s Br. [59], at 23.)  In support of this contention, Dick Corporation submitted declarations that suggested that Mr. Vivirito improperly included work performed by employees of three subcontractors - ArtCrete & Restorations, Inc. ("ArtCrete"), Johnston & Simmons Concrete Placing and Finishing, Inc. ("Johnston"), and Capform, when computing the delinquent contributions owed to Plaintiffs.  (Mem. Op. 9.)

As to the work performed by ArtCrete, Dick Corporation submitted a declaration from Wilbert E. Fisher ("Fisher Decl."), Dick Corporation's General Superintendent on the Miami Federal Courthouse project.  (Fisher Decl. [59-5] ¶ 1.)  Mr. Fisher stated that "[e]mployees who perform the sort of concrete finishing work performed by ArtCrete & Restorations, Inc. on this project are represented in this geographic area by Operative Plasterers and Cement Masons International Union, rather than by the Bricklayers and Allied Craftworkers ("BAC").  (*Id*. ¶ 4.) As to the work performed by Capform's subcontractors on the Miami Federal Courthouse project, Mr. Fisher stated that employees who perform the rebar placement, concrete finishing,

---

[4] The parties are separately briefing the issue of attorneys' fees.

and concrete placement work performed by Capform's subcontractors are represented by unions other than the BAC. (*Id.* ¶¶ 5-7.) Finally, as to the work performed by Johnston, Dick Corporation submitted a declaration from Shelby J. Gardner ("Gardner Decl."), Dick Corporation's Project Manager on the Fort Myers, Florida Midfield Terminal Expansion Project. (Gardner Decl. ¶ 1.) Mr. Gardner stated that the work performed by Johnston on this project was limited to the placing and finishing of concrete slabs and related work and that employees who perform this type of work are represented by unions other than the BAC. (*Id.* ¶¶ 2, 4-5.)

Applying the burden-shifting framework set forth in *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735 (7th Cir. 2004), the Court found that the "generalized and conclusory allegations" in the Fisher and Gardner Declarations were insufficient to challenge Mr. Vivirito's calculation of delinquent contributions. (Mem. Op. 10-11.) Accordingly, the Court granted summary judgment for Plaintiffs on the issue of damages and ordered Dick Corporation to pay the full $1,893,737.71 that Plaintiffs sought. (*Id.* 11.) On June 30, 2008, Dick Corporation moved this Court to "alter and/or amend its June 16, 2008 judgment against Dick Corporation to deny Plaintiffs' motion for summary judgment with respect to the damages they seek, and order a damages trial." (Def.'s Mem. Supp. Mot. [67], at 1.) Dick Corporation now argues that by applying *Laborers' Pension Fund* and rejecting the Fisher and Gardner Declarations, "the Court misapplied the law and misconstrued the record evidence in finding that Dick Corporation did not raise a genuine dispute of material fact regarding the contributions to which Plaintiffs are entitled." (*Id.*) Dick Corporation seeks a damages trial to resolve the $1,314,175.80 factual dispute created by the Fisher and Gardner Declarations. (*Id.*)

5

## II.     **Legal Standards**

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment within ten days after the entry of judgment.  The decision to grant or deny a motion to alter or amend judgment is within the discretion of the district court, but the motion must rely on one of three grounds: an intervening change in the law, newly available evidence or the need to correct clear error of law or prevent manifest injustice.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Reconsideration is appropriate when the Court has made a clear error of law or fact, or obviously misapprehended a party's position.  *See E.E.O.C. v. St. Francis Xavier Parochial School*, 20 F. Supp. 2d 66, 68 (D.D.C. 1998) (granting reconsideration based on mistaken interpretation of ADA's twenty-five-employee threshold); *Atl. States Legal Found. v. Karg Bros., Inc.*, 841 F. Supp. 51, 55 (N.D.N.Y. 1993) (granting reconsideration based on "misunderstanding of a relevant regulatory scheme").

The instant motion asks the Court to reconsider whether it properly applied Federal Rule of Civil Procedure 56(c) and *Laborers' Pension Fund* in concluding that Dick Corporation failed to demonstrate a genuine issue of material fact regarding damages.  Rule 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Once the moving party points to facts showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party may not rest on mere allegations, but must point to specific facts in the record showing that there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he mere scintilla of evidence in support of [the non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-moving] party." *Id*. at 252.  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all inferences are to be drawn in his favor." *Id*. at 255.

*Laborers' Pension Fund* addresses the standard for summary judgment in the context of an employee benefit plan's suit to recover delinquent contributions from an employer under ERISA and the Labor Management Relations Act.  *Laborers' Pension Fund*, 377 F.3d at 737.  In that case, Plaintiffs ("the Funds") retained two firms to audit Defendant RES Environmental Services, Inc. ("RES")'s books and records to determine whether RES was satisfying its obligations under a CBA.  *Id*.  RES ultimately challenged one of the auditor's reports ("Graff Report"), claiming, in part, that the Graff Report included hours relating to work that was not covered by the CBA.  *Id*.  RES supported this contention with an affidavit from its owner ("Stewart Affidavit"), which stated that it was his personal opinion that auditors regularly include employees and hours that are not covered by the CBA.  *Id*. at 737, 739.  The Stewart Affidavit also identified five employees and stated that they performed work that was not within the scope of the CBA.  *Id*. at 739.

The Court of Appeals affirmed the District Court's grant of summary judgment in favor of the Fund, agreeing that RES, through the Stewart Affidavit, failed to present a genuine issue of material fact for trial.  *Id*. at 737, 739.  The Court of Appeals found that the District Court properly "applied Seventh Circuit law when it held that once the Funds presented the audit report and established an absence of company records contradicting the Graff Report, the burden was on RES to establish a genuine issue of material fact barring summary judgment." *Id*. at 738-39.  The Court further held that in cases involving "genuine questions about the accuracy of an employer's

record-keeping practices" or a "deficiency in records," an evidentiary burden is imposed on employers to contradict the auditor's findings. *Id*. at 739. Finally, the Court of Appeals concluded that "generalized and conclusory allegations" such as those contained in the Stewart Affidavit, are insufficient to meet this evidentiary burden and prevent summary judgment. *Id*.

**III.     Discussion**

After re-examining the relevant legal standards, the Court concludes that it was correct in holding that Dick Corporation failed to demonstrate a genuine issue of material fact as to the calculation of damages for work performed by Capform's subcontractors. As was the case in *Laborers' Pension Fund*, Dick Corporation's failure to provide Mr. Vivirito with payroll records from Capform prevented him "from accurately determining the amount and type of work performed by" Capform's subcontractors. *Laborers' Pension Fund*, 377 F.3d at 739. In light of this "deficiency in records," the burden was on Dick Corporation to introduce specific factual assertions to dispute Mr. Vivirito's calculations. *Id*. Dick Corporation claims that the Fisher Declaration was sufficient to create a genuine issue of material fact regarding damages for work performed by Capform's subcontractors. (Def.'s Br. 23.) However, the Court finds, as it did in its earlier Memorandum Opinion, that this declaration contains the precise types of "generalized and conclusory allegations" that were insufficient to prevent summary judgment in *Laborers' Pension Fund*. Just as the Stewart Affidavit in that case simply stated that five employees performed work not covered by the CBA, so too does the Fisher Declaration state that employees of Capform's subcontractors performed rebar placement, concrete placement and concrete finishing work and were represented by unions other than the BAC. (Fisher Decl. ¶¶ 5-7.) These

bald assertions are insufficient to meet the evidentiary burden imposed by *Laborers' Pension Fund* and to prevent summary judgment.[5]  Therefore the Court will not alter or amend its earlier ruling with respect to Capform.

The Court now recognizes, however, that the evidentiary burden that *Laborers' Pension Fund* places on employers only arises when there is a deficiency in payroll or other company records such that the auditor is prevented from determining the amount and type of work performed by employees.  *See Laborers' Pension Fund*, 377 F.3d at 739.  Therefore the Court was incorrect in applying this precedent in assessing whether the Fisher and Gardner Declarations created a genuine issue of material fact as to the calculation of damages for work performed by ArtCrete and Johnston.  In the absence of the evidentiary burden imposed by *Laborers Pension Fund*, Dick Corporation need only point to specific facts in the record to demonstrate a genuine issue for trial.  *See Anderson*, 477 U.S., at 248.  Even though "the mere scintilla of evidence" is insufficient to prevent summary judgment, all inferences must be drawn in favor of Dick Corporation as the non-moving party.  *Id*. at 252, 255.  Applying these standards, the Court finds that the Fisher and Gardner Declarations are sufficient to create a genuine issue of material fact regarding Mr. Vivirito's calculation of damages for work performed by ArtCrete and Johnston.  The Court is confronted with, on the one hand, Mr.

---

[5] Plaintiffs provide examples of the types of evidence that Dick Corporation could have presented to meet its burden. (Pl.'s Opp'n 9.) Specifically, Plaintiffs highlight Dick Corporation's failure to provide: (1) "the specific employees that it contends should not have been included in the damage calculations;" (2) "the specific hours that it contends should not have been included;" (3) "any support for its assertion that the work on the projects at issue was limited to 'the placing and finishing of concrete slabs and related work,' 'concrete finishing work,' and/or 'rebar placement work;'" (4) "citations to any specific collective bargaining agreement provisions supporting its assertion that the auditor included work of a type not 'covered' by the agreement;" or (5) "citations to, or copies of, any specific documents whatsoever supporting its assertion that damages should be reduced from $1,893,737.71 to $569,137.77." (*Id*.)

Vivirito's assertion that he only calculated damages for employees who performed covered work (*see* 3d Vivirito Decl. ¶¶ 4-5.), and, on the other hand, the assertions from Messrs. Fisher and Gardner that employees of ArtCrete and Johnston were performing non-covered work (*see* Fisher Decl. ¶ 4; Garder Decl. ¶¶ 2, 4-5.)  This factual dispute can only be resolved following a damages trial at which the parties can present evidence and testimony regarding the amount of damages, if any, that Dick Corporation must pay Plaintiffs for work covered performed by these two subcontractors.

Finally, the Court notes that Dick Corporation has not moved to alter or amend that portion of the Court's earlier summary judgment ruling regarding Plaintiffs' entitlement to $569,137.77 in damages for work performed by subcontractors other than Capform, ArtCrete, and Johnston.  (*See* Def.'s Mem. Supp. Mot. 1-2.)  Therefore this portion of the Court's earlier Order remains intact

**IV.     Conclusion**

This Court's June 16, 2008 grant of summary judgment in favor of Plaintiffs regarding the damages to which they are entitled for work performed by subcontractors other than ArtCrete and Johnston is firmly grounded in Rule 56(c) and *Laborers' Pension Fund* and will not be disturbed.  Dick Corporation shall pay damages to Plaintiffs in the amount of $1,752,255.55, representing delinquent contributions, interest, total interest, and costs attributable to all subcontractors other than ArtCrete and Johnston.[6]  As to damages for work performed by

---

[6] The Court derives this figure from Attachment B to Plaintiff Funds' Surreply in Support of its Position on Remand [63], which Plaintiffs submitted to provide the Court with an alternative calculation of damages should the Court have decided to grant partial summary judgment in favor of Plaintiffs.  (Pl.'s Surreply 12 n.22, 15.)

ArtCrete and Johnston, the Court alters its earlier order and finds that Dick Corporation has demonstrated a genuine issue of material fact. The parties shall appear before this Court for a trial to determine the amount of damages that Dick Corporation must pay to Plaintiffs for work performed by these two subcontractors.

  An Order consistent with this Memorandum Opinion is filed contemporaneously herewith.


Date: July  21st , 2008             /s/
                    ALAN KAY
                    UNITED STATES MAGISTRATE JUDGE

---

Attachment B is based on the figures provided by Mr. Vivirito in his audit report and excludes all work performed by ArtCrete and Johnston. (*Id*.) Dick Corporation has not disputed the alternative damages calculation set forth in Attachment B.