UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN FLYNN,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DICK CORPORATION,** <br><br> Defendant. | Civil Action No. 03-1718 (AK) |

**MEMORANDUM OPINION**

Pending before the Court are Defendant Dick Corporation's Motion for Reconsideration and for Leave to Supplement the Record [73], Plaintiff Fund's Opposition [77], and Defendant Dick Corporation's Reply [79].  Upon consideration of the pleadings, the record, and the relevant circumstances of the case, the Court will grant Defendant's motion.

**I.    Background**

This case involves Plaintiffs' claim that Defendant Dick Corporation breached a Collective Bargaining Agreement ("CBA") that was in effect at its Florida job sites by employing non-union subcontractors.[1]  (Mem. Op. [64] at 2.)  On June 16, 2008, the Court found "that there is no genuine issue of material fact as to the existence of a CBA in effect at Dick Corporation's Florida job sites such that the Fund is entitled to summary judgment."  (*Id*. 7.)  Because Dick Corporation did not dispute that it breached the CBA by employing non-union subcontractors,

---

[1] For a more detailed recitation of the lengthy factual and procedural history of this case, see this Court's June 16, 2008 Memorandum Opinion.

the Court then calculated the damages that Dick Corporation owed to Plaintiffs on account of its breach. (*Id.*)

Plaintiffs sought $1,893,737.71, representing $727,345.78 in delinquent contributions, $577,983.88 in interest, $577,983.88 in additional interest, $10,424.17 in expenses, and attorneys' fees in an amount to be determined later pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA").[2] (*Id.*) To establish the amount of contributions that Plaintiffs would have received absent Dick Corporation's breach of the CBA[3], Plaintiffs submitted a declaration from Philip Vivirito ("Vivirito Decl."), an independent auditor who reviewed Dick Corporation's books and records. (*Id*. 8.) Mr. Vivirito examined the payroll records of Dick Corporations's subcontractors "to determine which employees of Dick Corporation and its subcontractors were performing [ ] work" covered by the CBA." (3d Vivirito Decl. [59-5] ¶ 4.) The payroll records allowed Mr. Vivirito to determine which employees were

---

[2] Section 502(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title [requiring contributions under the terms of a CBA] in which a judgment in favor of the plan is awarded, the court shall award the plan --
    (A) the unpaid contributions,
    (B) interest on the unpaid contributions;
    (C) an amount equal to the greater of --
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

[3] The Court of Appeals held that "[t]he Fund is entitled to damages resulting from the breach in the form of benefit contributions 'in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties." *Flynn*, 481 F.3d at 832-33 (quoting *Trs. of the Teamsters Constr. Workers Local 13, Health & Welfare Trust Fund for Colo. v. Hawg N Action, Inc.*, 651 F.2d 1384, 1386-87 (10th Cir. 1981).

performing covered work because they "specifically indicated the type of work each employee was performing by stating, next to each employees name, 'bricklayer,' 'laborer,' etc." (*Id.*)  For one of Dick Corporation's subcontractors, Capform, Inc. ("Capform"), Dick Corporation failed to provide Mr. Vivirito with certified payroll records, and accordingly Mr. Vivirito "did not have information indicating the names of the employees who performed the work or the number of hours that each employee worked in each of the various months covered by the audit." (*Id.* ¶ 7.) Because Mr. Vivirito "only had the total number of man hours attributable to Capform, Inc.'s subcontractors in Florida," Mr. Vivirito "included these hours in calculating the damages owed by Dick Corporation by allocating them evenly to each month covered by the audit." (*Id.*)

Mr. Vivirito's "audit revealed that Dick Corp.'s subcontractors failed to report and remit contributions for a total of 155,062 hours paid to its employees for bargaining unit work performed under the Florida agreement." (Vivirito Decl. [61-4] ¶ 7.)  Using the contribution rates set forth in the Blanco Declaration, Mr. Vivirito determined that Dick Corporation owed delinquent contributions in the amount of $727,345.78. (*Id.* ¶¶ 8-9.)  Mr. Vivirito also calculated the amount of interest and additional interest that the Fund is entitled to recover under ERISA. In accordance with the *Collection Procedures of the Central Collections Unit of the Bricklayer and Allied Craftworkers* ("Collection Procedures"), Mr. Vivirito assessed interest on the delinquent contribution at a rate of fifteen per cent per annum and determined that the total interest due was $577,983.88. (*Id.* ¶ 10.)  Mr. Vivirito also assessed additional interest in accordance with the Collection Procedures at a rate of fifteen per cent per annum and determined that Dick Corporation owed an additional $577,983.88 in interest. (*Id.* ¶ 11.)  Based on these calculations, Mr. Vivirito concluded that Dick Corporation owed a total of $1,155,967.76 in

interest and additional interest.  (*Id*. ¶ 13.)

Dick Corporation did not challenge Plaintiffs' claim for attorneys' fees[4] and costs or their entitlement to, or Mr. Vivirito's calculation of, interest and additional interest.  (Mem. Op. [64] at 9.)  Dick Corporation did, however, challenge Plaintiffs' calculation of delinquent contributions and argued that there were "significant disputed material facts regarding the quantum of contributions" such that a grant of summary judgment in favor of Plaintiffs on the issue of damages would be inappropriate.  (*Id*.)  Specifically, Dick Corporation asserted that there were disputes about "how much of the work subcontracted by Dick Corporation was covered by the Florida CBA's trade jurisdiction such that this subcontracting violated the Florida CBA."  (Def.'s Br. [59] at 23.)  In support of this contention, Dick Corporation submitted declarations that suggested that Mr. Vivirito improperly included work performed by employees of three subcontractors - ArtCrete & Restorations, Inc. ("ArtCrete"), Johnston & Simmons Concrete Placing and Finishing, Inc. ("Johnston"), and Capform, when computing the delinquent contributions owed to Plaintiffs.  (Mem. Op. at 9.)

As to the work performed by ArtCrete, Dick Corporation submitted a declaration from Wilbert E. Fisher ("Fisher Decl."), Dick Corporation's General Superintendent on the Miami Federal Courthouse project.  (Fisher Decl. [59-5] ¶ 1.)  Mr. Fisher stated that "[e]mployees who perform the sort of concrete finishing work performed by ArtCrete & Restorations, Inc. on this project are represented in this geographic area by Operative Plasterers and Cement Masons International Union, rather than by the Bricklayers and Allied Craftworkers ("BAC").  (*Id*. ¶ 4.)

---

[4] The parties separately briefed the issue of attorneys' fees.  (*See* Plaintiffs' Mot. for Attorney's Fees [70], Defendant's Opp'n [76], and Plaintiffs' Reply [78].  The Court will address that issue in a separate Memorandum Order and Opinion.

4

As to the work performed by Capform's subcontractors on the Miami Federal Courthouse project, Mr. Fisher stated that employees who perform the rebar placement, concrete finishing, and concrete placement work performed by Capform's subcontractors are represented by unions other than the BAC.  (*Id*. ¶¶ 5-7.)  Finally, as to the work performed by Johnston, Dick Corporation submitted a declaration from Shelby J. Gardner ("Gardner Decl."), Dick Corporation's Project Manager on the Fort Myers, Florida Midfield Terminal Expansion Project.  (Gardner Decl. ¶ 1.)  Mr. Gardner stated that the work performed by Johnston on this project was limited to the placing and finishing of concrete slabs and related work and that employees who perform this type of work are represented by unions other than the BAC.  (*Id*. ¶¶ 2, 4-5.)

Applying the burden-shifting framework set forth in *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735 (7th Cir. 2004), the Court found that the "generalized and conclusory allegations" in the Fisher and Gardner Declarations were insufficient to challenge Mr. Vivirito's calculation of delinquent contributions.  (Mem. Op. [64] at 10-11.)  Accordingly, the Court granted summary judgment for Plaintiffs on the issue of damages and ordered Dick Corporation to pay the full $1,893,737.71 that Plaintiffs sought.  (*Id*. 11.)  On June 30, 2008, Dick Corporation moved this Court to "alter and/or amend its June 16, 2008 judgment against Dick Corporation to deny Plaintiffs' motion for summary judgment with respect to the damages they seek, and order a damages trial."  (Def.'s Mem. Supp. Mot. [67] at 1.)  Dick Corporation argued that by applying *Laborers' Pension Fund* and rejecting the Fisher and Gardner Declarations, "the Court misapplied the law and misconstrued the record evidence in finding that Dick Corporation did not raise a genuine dispute of material fact regarding the contributions to which Plaintiffs are entitled."  (*Id*.)  Dick Corporation further argued that a damages trial was

necessary to resolve the $1,314,175.80 factual dispute created by the Fisher and Gardner Declarations. (*Id.*)

This Court reviewed the relevant legal standards and concluded that while it was correct in holding that Dick Corporation failed to demonstrate a genuine issue of material fact as to the calculation of damages for work performed by Capform's subcontractors, the Court's application of evidentiary burden under *Laborers' Pension Fund* ArtCrete and Johnson was inappropriate in light of the fact that there was no deficiency in payroll or other company records. (Mem. Op. [71] at 9.) Without the heightened evidentiary burden, ArtCrete and Johnston needed only to point to specific facts in the record to create a genuine issue of material fact for trial, and the Court found that the Fisher and Gardner Declaration were sufficient in so doing. (*Id.*) As a result, the Court ordered a damages trail on the issue of the amount of damages, if any, that Dick Corporation must pay Plaintiffs for covered work performed by the two subcontractors. (*Id.*) On the claims concerning Capform, however, the Court reasoned that Dick Corporation's failure to provide Mr. Vivitrio with payroll records from Capform prevented him from accurately determining the amount and type of work preformed under *Laborers Pension Fund*. (*Id.* at 8.) In light of such a deficiency in records, the Court concluded that the burden fell on Dick Corporation to introduce specific factual assertions to dispute Mr. Vivirito's calculations. (*Id.*) Because, as the Court found in its earlier Memorandum Opinion, the Fisher declaration, which was offered by Dick Corporation as creating a genuine issue of material fact work performed by Capform's subcontractors, contained the precise types of "generalized and conclusory allegations" that were insufficient to prevent summary judgment in *Laborers' Pension Fund*, the Court determined that it should not alter its earlier ruling with respect to Capform. (*Id.* at 8-9.)

6

Dick Corporation subsequently moved for reconsideration and for leave to supplement the record with the Capform subcontractors' certified payrolls. (Def.'s Mot. for Reconsideration [73].) Dick Corporation argues that the interests of justice warrant allowing it to address the Capform subcontractor work at the damages trial because it was previously unaware of the importance that would be attached to the Capform subcontractor payrolls. (*Id.* at 10-11.) In particular, Dick Corporation contends that it was not until Plaintiffs' Opposition to Dick Corporation's Motion to Alter or Amend Judgment that it learned for the first time that Plaintiffs were alleging that Dick Corporation failed to maintain adequate records with respect to Capform and that this should trigger the *Laborers' Pension Fund* burden-shifting framework. (*Id.* at 14.) Because it was not permitted to file a Reply due to an expedited briefing schedule, Dick Corporation argues that it should now be afforded an opportunity to respond to such an argument and provide the Capform subcontractor payrolls to avoid summary judgment on this portion of the Union trade jurisdiction damages dispute. (*Id.* at 15.)

Plaintiffs respond that Dick Corporation has failed to provide any basis for the Court to reconsider its damages judgment under Rule 54(b) and that it should not be permitted to supplement the record with previously available evidence that was not provided despite ample opportunities to do so. (Pls.' Opp'n [77].) Plaintiffs assert that Dick Corporation failed to produce the payroll records for Capform even though it had those records in its possession, was specifically requested to produce them during discovery, and had numerous opportunities to produce them throughout the course of the litigation. (*Id.* at 1-8.)

## II.  Legal Standards

Federal Rule of Civil Procedure 54(b) "governs reconsideration of or orders that do not constitute final judgments in a case." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). "Reconsiderations of interlocutory orders 'are within the discretion of the trial court' and are 'therefore subject to the complete power of the court rendering them to afford such relief from them as justice requires.'" *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). In determining whether reconsideration is warranted, courts often consider whether the court has patently misunderstood the parties or made an error of apprehension, whether the parties have proffered supplemental evidence or new theories not previously before the court, or whether the decision was outside the issues presented to the court by the parties. *See Scott v. District of Columbia*, 246 F.R.D. 49, 51 (D.D.C. 2007); *Cobell*, 355 F. Supp. 2d at 539 (reviewing cases). Ultimately, however, "asking what justice requires amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell*, 355 F. Supp. 2d at 539.

## III.  Discussion

After reviewing the pleadings, the record and the procedural history of the case, as well as the exhibits proffered by Defendant Dick Corporation, the Court concludes that justice requires that the damages trial to be held includes the issues related to Capform. The Court is now

confronted with what, in light of the Capform subcontractor payrolls proffered by Dick Corporation in Exhibit 1 to its Motion for Reconsideration, is a clear and genuine issue of material fact that is appropriate for trial rather than resolution on summary judgment.  As noted by Dick Corporation, the presence of the Capform subcontractor payrolls has created a nearly indistinguishable factual record from the record regarding the other two subcontractors, Johnston and ArtCrete, on which the Court ordered a damages trial.  It would ultimately be arbitrary to proceed with a damages trial on the issues related to those two subcontractors and not for the issues related to Capform now that there is clear evidence of disputed material fact on the Capform work before the Court.

       The Court is of course mindful and troubled that the Capform payroll records were not produced by Dick Corporation at any prior point during the course of this litigation.  The recitation in Plaintiff's Opposition of the number of instances when Dick Corporation could and should have produced the disputed payroll records demonstrates full well that Dick Corporation did not diligently meet its discovery obligations with respect to the Capform payrolls.  (*See* Pl.'s Opp'n [77] at 3-8.)  Dick Corporation asserts that it "was initially unable to locate this one set of payrolls and provided Plaintiff with what it understood to be their total hours in recognition of the absence of the actual payrolls." (Def.'s Reply [79] at 4.)  It further contends that "the payrolls were not produced sooner thereafter because of the press of the close of discovery, long-running settlement discussions and long-running briefing on the parties' cross motions for summary judgment, post-summary judgment motions, an appeal and remand, Plaintiffs raising no initial objection to receiving the total Capform subcontractor work hours in lieu of the then unavailable payrolls, and Dick Corporation's lack of notice of the need to provide these payrolls

to avoid a higher evidentiary burden for establishing a dispute of material fact regarding damages." (*Id.*) It is apparent therefore that Dick Corporation relied on Plaintiff's acceptance of the total Capform subcontractor work hours in lieu of the payrolls without vociferous and repeated objection and assumed that it could rely on the Fisher and Gardner declarations to withstand summary judgment on damages. The payroll records, however, should have been produced whenever they became available regardless of whether Plaintiff specifically re-requested those records.

Despite this failure to timely produce the payroll records, the Court's review of the whole record and the circumstances and procedural history of the case leads it to conclude that damages should be determined at an evidentiary hearing based on a complete record that includes the long-missing payroll records. With the inclusion of the Capform payroll records, the *Laborers' Pension Fund* burden-shifting framework no longer applies, and the Fisher and Gardner Declarations become sufficient to create a genuine issue of material fact regarding Mr. Vivitrio's calculation of damages. (*See* Mem. Op. [71] at 9.) Given the long and circuitous procedural history of the case, the Court is left with the view that justice requires that the remaining damages issues related to all three subcontractors be determined after a full evidentiary hearing.

**IV.     Conclusion**

This Court will therefore amend its July 21st, 2008 order granting in-part and denying-in-part Dick Corporation's Motion to Alter and Amend the Judgment. Dick Corporation shall pay damages to Plaintiffs in the amount of $225,398.73 plus interest, total interest, and costs, representing the delinquent contributions attributable to all subcontractors other than ArtCrete,

Johnston, and Capform.[5]  As to damages for work performed by ArtCrete, Johnston, and Capform, the Court amends its earlier order and finds that Dick Corporation has demonstrated a genuine issue of material fact.  The parties shall appear before this Court for a trial to determine the amount of damages that Dick Corporation must pay to Plaintiffs for work performed by these three subcontractors.

     An Order consistent with this Memorandum Opinion is filed contemporaneously herewith.


Date: June  1st , 2009                                   /s/                                  
                                                          ALAN KAY
                                                          UNITED STATES MAGISTRATE JUDGE

---

[5]The Court derives this figure from Attachment A to Plaintiff Funds' Surreply in Support of its Position on Remand [63], which Plaintiffs submitted to provide the Court with an alternative calculation of damages should the Court have decided to grant partial summary judgment in favor of Plaintiffs.  (Pl.'s Surreply 12 n.22, 15.)  Attachment A is based on the figures provided by Mr. Vivirito in his audit report and excludes all work performed by ArtCrete, Johnston, and Capform.  (*Id*.)  Dick Corporation has not disputed the alternative damages calculation set forth in Attachment A.